Anna Y. Park, SBN 164242
Lorena Garcia-Bautista, SBN 234091
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 894-1108
Facsimile:  (213) 894-1301
E-Mail: lado.legal@eeoc.gov
         lorena.garcia@eeoc.gov
Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Peter A. Schey, SBN 58232
Law Office of Peter A. Schey
11994 Chalon Rd.
Los Angeles, CA 90049
Telephone: (323) 251-3223
Facsimile: (323) 526-6537
E-Mail: peter@peterschey.com

Joyce Crucillo
American Apparel
747 Warehouse Street
Los Angeles, CA 90021
Telephone: (213) 272-9642
Facsimile: (213) 201-3046
E Mail: joycec@americanapparel.net
Attorneys for Defendant
AMERICAN APPAREL

E-FILED 12.15.11

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN APPAREL, and DOES 1-10, Inclusive, <br><br> Defendants. | Case No.: CV 10-07280 MMM(MANx) <br><br> **SETTLEMENT AND CONSENT DECREE AND [PROPOSED] ORDER THEREON** |

# I.

# INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission (hereafter "EEOC" or the "Commission") and Defendant American Apparel (hereafter "American Apparel" or "Defendant") hereby stipulate and agree to the entry of this Settlement and Consent Decree (hereinafter "Agreement") to resolve the EEOC's complaint against Defendant in U.S. Equal Employment Opportunity Commission v. American Apparel, Case No. 10-cv-07280MMM(MANx) (the "Action").  On September 29, 2010, the EEOC filed this Action against American Apparel pursuant to Title I of the Americans with Disabilities Act of 1990 (the "ADA") and Title I of the Civil Rights Act of 1991.  In the Action, the EEOC alleges American Apparel discriminated against Charging Party Jose De Los Santos ("Charging Party") by denying him reasonable accommodation and discharging him because of his disability, cancer. American Apparel asserts that it is committed to the implementation of the ADA and denies that it at any time has violated the ADA.

Because each of the parties is committed to full implementation of the ADA, and wish to avoid the expense and uncertainty of further litigation, they have entered into this Agreement.

# II.

# PURPOSES AND SCOPE OF THE AGREEMENT

A.     The Parties to this Agreement are the EEOC and American Apparel.   This Agreement shall be binding on and enforceable against the EEOC and American Apparel and their respective officers, directors, agents, successors and assigns.

B.     The Parties have entered into this Agreement for the following purposes:

    1.     To provide appropriate monetary and other injunctive relief;

    2.     To ensure that American Apparel's employment practices comport with federal law;

1        3.      To ensure training for American Apparel's human resources

2    personnel, managers, supervisors, and employees with respect to their obligations

3    under the ADA[1] with an emphasis on reasonable accommodation(s) and request for

4    leave of absences under the ADA to employees with disabilities and equal

5    treatment of employees with care-giving responsibilities;

6        4.      To ensure American Apparel provides effective reasonable

7    accommodation(s), including, but not limited to, request for leave of absence under

8    the ADA, to qualified individuals with a disability;

9        5.      To continue to ensure that no one is subject to retaliation; and

10       6.      To review and update American Apparel's procedures for handling

11   requests for accommodation in the workplace.

12   **III.**

13   **RELEASE OF CLAIMS**

14   A.    This Agreement fully and completely resolves all issues, claims and

15   allegations raised in the complaint filed on September 29, 2010 by the EEOC in

16   this Action in the United States District Court, Central District of California,

17   captioned U.S. Equal Employment Opportunity Commission v. American Apparel;

18   Civil Case No. 10-cv-07280 MMM(MANx), and the Answer filed by American

19   Apparel on January 6, 2011.

20   B.    Nothing in this Agreement shall be construed to preclude any party from

21   bringing suit to enforce this Agreement in the event that any party hereto fails to

22   perform the promises and representations contained herein.

23   C.    Nothing in this Agreement shall be construed to limit or reduce American

24   Apparel's obligation to comply fully with the ADA or any other federal

25   employment statute, nor shall anything in this Agreement be construed as imposing

26

27   _____

28   [1]    "ADA" as used in this Consent Decree refers to the American Disability Act of 1990 and the American Disability Act Amendments Act of 2008 ("ADAAA").

duties and obligations upon American Apparel which are not required under the ADA, or any other federal employment statute.

D.     This Agreement in no way affects the EEOC's right to bring, process, investigate or litigate other charges that may be in existence or may later arise against American Apparel in accordance with standard EEOC procedures.

### IV.

### JURISDICTION

A.     The Court has jurisdiction over the Parties and the subject matter of this Action.  The complaint in this Action asserts claims that, if proven, would authorize the Court to grant equitable relief as set forth in this Agreement.

B.     The terms and provisions of this Agreement are fair, reasonable and just.

C.     This Agreement conforms with the Federal Rules of Civil Procedure and the ADA and is not in derogation of the rights or privileges of any person.

D.     The Court shall retain jurisdiction of this Action during the duration of the Agreement for the purposes of entering all orders, judgments and decrees that may be necessary to implement the terms of this Agreement.

### V.

### EFFECTIVE DATE AND DURATION OF THE AGREEMENT

A.     The provisions and agreements contained herein are effective immediately upon the date which this Agreement is approved by the Court ("the Effective Date").

B.     Except as otherwise provided herein, this Agreement shall remain in effect for three (3) years after the Effective Date.

### VI.

### MODIFICATION AND SEVERABILITY

A.     This Agreement constitutes the complete understanding of the Parties with respect to the matters contained herein.  No waiver, modification or amendment of

any provision of this Agreement will be effective unless made in writing and signed by an authorized representative of each of the Parties.

B.      If one or more provisions of the Agreement are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments to this Agreement in order to effectuate the purposes of the Agreement.  In any event, the remaining provisions will remain in full force and effect unless the purposes of the Agreement cannot, despite the Parties' best efforts, be achieved.

C.      By mutual agreement of the Parties, this Agreement may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of this Agreement.

## VII.

## COMPLIANCE AND DISPUTE RESOLUTION

A.      The parties expressly agree that if either party has reason to believe that the other party has failed to comply with any provision of this Agreement, the complaining party may bring an action before this Court to enforce the Agreement. Prior to initiating such action, the complaining party will notify the other party and its legal counsel of record, in writing, of the nature of the dispute.  This notice shall specify the particular provision(s) that the party believes the other party has breached.  Absent a showing by either party that the delay will cause irreparable harm, the responding party shall have forty five (45) days to attempt to resolve or cure the alleged breach, however, the parties can agree to extend this period upon mutual consent.

B.      The parties agree to cooperate with each other and use their best efforts to resolve any disputes regarding compliance with this Agreement.

C.      After forty five (45) days have passed with no resolution or agreement to extend the time further, the complaining party may petition Magistrate Judge Margaret A. Nagle for resolution of the dispute, seeking all available relief,

including an extension of the term of the Agreement for such period of time, and/or other relief that the Court deems appropriate. Any party dissatisfied with Magistrate Judge Nagle's decision or orders may seek review and appeals as in any other civil case addressed by a Magistrate Judge.

## VIII.

## MONETARY AND VICTIM SPECIFIC RELIEF

A.   Monetary Relief for Claimant

1.   In settlement of this lawsuit, American Apparel shall pay Jose De Los Santos $40,000 (the "Settlement Amount"). $20,000 of the Settlement Amount shall be paid within ten (10) days of the Effective Date of this Agreement via certified mail payable to Jose De Los Santos.  The balance of $20,000 of the Settlement Amount shall be paid no later than 180 days after the Effective Date of this Agreement via certified mail payable to Jose De Los Santos.  Within five (5) days of the Effective Date of this Agreement, the EEOC shall forward to American Apparel De Los Santos' address.

 The Settlement Amount shall be designated as non-wage compensation under the ADA, and no tax withholding shall be made.  American Apparel shall prepare and distribute 1099 tax reporting form to Jose De Los Santos and shall make appropriate reports to the Internal Revenue Service.

Within three (3) business days of the issuance of the settlement checks, American Apparel shall submit copies of the checks and related correspondence to the Regional Attorney, Anna Y. Park, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, CA 90012.

B.   Claimant's Specific Relief

1.   American Apparel agrees to purge Jose De Los Santos' employment records of any negative warnings, disciplines, or other negative references during the time of his employment with American Apparel.

2.    If an inquiry is made into Jose De Los Santos' employment history, the only information that shall be disclosed will be the dates of employment and the positions he held, and that his job performance was satisfactory.  American Apparel shall designate Jose De Los Santos' separation from employment as a termination due to a reduction in force.

## IX.

## GENERAL RELIEF

A.    <u>Non-Discrimination</u>

American Apparel, its officers, agents, management (including all supervisory employees), lead employees or team leaders, successors, assigns and all those in active concert or participation will for the duration of the Agreement engage in employment practices consistent with the ADA.  Such employment practices will include, but are not limited to, (1) ensuring disabled individuals an equal opportunity to enjoy the benefits and privileges of employment by providing reasonable accommodation(s) pursuant to the ADA; and (2) ensuring employees with care-giving responsibilities equal treatment under the ADA.

B.    <u>Non-Retaliation</u>

American Apparel, its officers, agents, management (including all supervisory employees), lead employees or team leaders, successors, assigns, and all those in active concert or participation with them, or any of them, will not engage in, implement or permit any action, policy or practice with the purpose of retaliating against any current or former employee or applicant of American Apparel, or either of them, because he or she has in the past, or during the term of this Agreement: (a) opposed any practice made unlawful under the ADA; (b) filed a charge of discrimination alleging such practice; (c) testified or participated in any manner in any investigation (including without limitation, any internal investigation undertaken by American Apparel), proceeding in connection with this case and/or relating to any claim of an ADA violation; (d) was identified as a

possible witness or claimant in this action; (e) asserted any rights under this Agreement; (f) associated and/or provided care for an individual with a disability; and/or (g) sought and/or received any relief in accordance with this Agreement.

## X.

## SPECIFIC RELIEF

A.     ADA Coordinator

1.     American Apparel has appointed an attorney in its Legal Department to serve as its ADA Coordinator to implement and monitor American Apparel's compliance with federal employment anti-discrimination laws and the provisions of this Agreement.  American Apparel shall continue to have an attorney in its Legal Department to serve as its ADA Coordinator for the term of this Agreement. The ADA Coordinator reports to and for the term of this Agreement shall continue to report to American Apparel's General Counsel. The ADA Coordinator's responsibilities are set forth in American Apparel's ADA Policy attached hereto as Exhibit 1, and as follows:

2.     Specifically, the ADA Coordinator's responsibilities for the term of this Agreement include:

a.     Ensuring and assisting in the review and revision of American Apparel's anti-discrimination policies and procedures as required by this Agreement, including but not limited to a prohibition against discrimination on the basis of disability protected under the ADA, a prohibition against retaliation for engaging in activities protected under the ADA, and a description of the employer's obligation to comply with the ADA by providing reasonable accommodations to persons covered under the ADA and a prohibition against discrimination of employees and applicants because of a disability of an individual with whom the employee or qualified

1          applicant is known to have a relationship or association;

2          American Apparel timely provides any available effective

3          reasonable accommodation with regard to all terms, conditions,

4          benefits, and privileges of employment, including a fast-track

5          process for certain physical or mental impairments that should

6          easily be concluded to be disabilities such as deafness and other

7          limitations listed at 29 C.F.R. § 1630.2(j)(3)(iii);

8    b.    Ensuring dissemination of American Apparel's policies and

9          procedures as required by this Agreement;

10    c.    Reviewing and ensuring any training as required by this

11          Agreement;

12    d.    Reviewing any interactive process to ensure compliance with

13          federal employment anti-discrimination laws and the terms of

14          this Agreement;

15    e.    Reviewing any decision regarding the provision or denial of

16          any accommodation to ensure compliance with federal

17          employment anti-discrimination laws and the terms of this

18          Agreement;

19    f.    Ensuring and verifying American Apparel's compliance with

20          all posting, recordkeeping, reporting, and notice requirements

21          contained in this Agreement;

22    g.    Ensuring that American Apparel's procedures to handle

23          complaints of discrimination, harassment and retaliation, on the

24          basis of actual or perceived disability, comply with its

25          obligations under this Agreement;

26    h.    Ensuring that American Apparel has developed a reasonable

27          accommodation procedure whereby the need for reasonable

28          accommodation is identified, potential reasonable

accommodations are explored, and reasonable accommodations are selected, which procedure shall require that all issues of reasonable accommodation be referred to the ADA Coordinator for his/her direct attention and resolution; ensuring that American Apparel's anti-discrimination policy and reporting procedure effectively carries out its obligations under this Agreement;

i. Monitoring all accommodation requests to ensure compliance with the ADA;

j. Ensuring that American Apparel properly communicates with complainants regarding the complaint procedure, status of the complaint/investigation, results of the investigation, and any remedial action taken;

k. Ensuring that American Apparel's reports required by this Agreement are accurately compiled and timely submitted;

l. Ensuring that American Apparel's disciplinary policies hold employees and managers accountable for failing to take appropriate action and/or for engaging in conduct prohibited under this Agreement;

m. Ensuring American Apparel provides leaves of absences in conformity with the ADA;

n. Receiving and processing any request for accommodation;

o. Participating in or reviewing any interactive process to ensure compliance with federal employment anti-discrimination laws and the terms of this Agreement;

p. Participating in or reviewing any decision regarding the provision or denial of any accommodation to ensure

1    compliance with federal employment anti-discrimination laws

2    and the terms of this Agreement;

3    q.    Reviewing any accommodation to ensure the accommodation

4    remains an effective reasonable accommodation with regard to

5    all terms, conditions, benefits, and privileges of employment,

6    including both essential and non-essential aspects of the job.

7    r.    Receiving, processing, and investigating complaints of

8    disability discrimination and retaliation;

9    s.    Communicating with employees regarding the status and

10    resolution of requests for accommodation and complaints and

11    discrimination.

12    t.    Ensuring that all managerial and supervisory-level employees,

13    identified in Exhibit 3, who work at American Apparel's

14    production facility located at 747 Warehouse Street, Los

15    Angeles, CA 90021, are trained about employees' rights and

16    responsibilities under the ADA, including but not limited to,

17    issues of accommodation and equal treatment of employees

18    with care-giving responsibilities under the ADA, and American

19    Apparel's policies and procedures relating to the ADA, and

20    retaliation, and ensuring that all hourly employees as identified

21    in Section X. D.1., and who are not identified in Exhibit 3, who

22    work at American Apparel's production facility located at 747

23    Warehouse Street, Los Angeles, CA 90021, are informed about

24    their rights and responsibilities under the ADA, including but

25    not limited to, issues of accommodation and equal treatment of

26    employees with care-giving responsibilities under the ADA,

27    and American Apparel's policies and procedures relating to the

28    ADA, and retaliation; and

u.   Further ensuring American Apparel's compliance with federal employment anti-discrimination laws and the terms of this Agreement.

B.   <u>Policies and Procedures</u>

1.   American Apparel's ADA Policy is attached as Exhibit 1. The inclusion of American Apparel's ADA Policy as Exhibit 1 is not intended to reflect the EEOC's approval of American Apparel's ADA Policy or American Apparel's extension to the EEOC of the right to approve its ADA Policy in all respects.

2.   Within sixty (60) days of the Effective Date, American Apparel will insure that (1) Part 1 of its ADA policy (Exhibit 1) has been posted in English, Spanish, and/or any other dominant language the employees understand in places that are conspicuous and accessible to all employees in a legible font that is a minimum of 15 points in size at American Apparel's production facility located at 747 Warehouse Street, Los Angeles, CA 90021, (2) Part 1 of its ADA policy has been posted in English, Spanish, and/or any other dominant language the employees understand in places that are conspicuous and accessible to all employees in a legible font that is a minimum of 15 points in size at all of American Apparel's other locations in the United States, and (3) Part 1 of its ADA policy is included with any employee manuals distributed to employees by American Apparel and/or in any materials distributed to new employees hired by American Apparel. American Apparel shall collect acknowledgments from each employee who receives the ADA policy, in either English, Spanish and/or in any other dominant language depending on the language preference of each employee. Within 90 days of the Effective Date of this Agreement, American Apparel shall inform the EEOC in writing that it has complied with this sub-paragraph.

3.   During the term of this Agreement, the policy shall include:

a.   A clear explanation of prohibited conduct;

b.      Assurance that employees who make complaints of disability harassment/ discrimination or provide information related to such complaints will be protected against retaliation;

c.      A clearly described complaint process that provides accessible and confidential avenues of complaint with contact information including name (if applicable), address, and telephone number of persons both internal (i.e. human resources) and external to American Apparel (i.e. Commission and ADA Coordinator available to handle complaints concerning high level company officials of American Apparel's corporate hierarchy) to whom employees may report discrimination and retaliation, including a written statement that the employee may report the discriminatory behavior to designated persons outside their chain of management;

d.      Assurance that the employer will protect the confidentiality of discrimination complaints or accommodation requests to the extent possible;

e.      A complaint process that provides a prompt, thorough, and impartial investigation;

f.      A procedure for communicating with the complainant in writing regarding the status of the complaint/investigation, results of the investigation, and any remedial action taken;

g.      Assurance that American Apparel will take immediate and appropriate corrective action when it determines that harassment/discrimination and/or retaliation has occurred.

h.      Assurance that American Apparel will provide reasonable accommodations, including but not limited, to a request for leave of absence under the ADA, and those employees with care-giving responsibilities.

i.      American Apparel must identify the persons to whom requests for leave of absence shall be made.

j.      American Apparel shall establish a toll-free hotline ("hotline") and disseminate the information regarding the hotline to all of its employees. American Apparel shall inform all employees that a request for a reasonable accommodation, including but not limited to, a request for leave of absence pursuant to the ADA can be lodged at any time with the toll-free hotline.  The hotline shall be answered by an electronic answering machine that provides instructions about making a request for accommodation. All messages left on the hotline answering machine shall be logged by American Apparel's ADA Coordinator during the term of the Agreement, including the time of the call and a transcription of the message left on the answering machine.  The ADA Coordinator shall be the only person who has access to the recordings on the hotline for the term of this Agreement.  As such, the hotline recordings shall be retained throughout the term of this Agreement.

4.      The procedures for requests for leave of absence shall incorporate the following additional elements:

a.      describe how to make a request for leave of absence;

b.      require a prompt commencement and thorough investigation by a person trained to engage in the interactive process with respect to request for leave of absence;

c.      require a written record for all requests for leave of absence made, which includes the employee's name, the name of the person(s) to whom the request for leave of absence was made, and all relevant documents that were reviewed in determining whether to grant and/or deny the request for leave of absence;

d.      require a written record of all interactive process, and any findings and conclusions, and any actions taken;

e.      a provision for the reasonably prompt resolution of requests for leave of absence;

f.      an opportunity for the employee to review and respond to tentative findings, except in this circumstances in which it is necessary to take immediate action;

g.      confidentiality of the requests for leave of absence;

h.      appropriate communication of the final conclusions of the request for leave of absence made to the employee;

i.      an appeal procedure to an appropriate American Apparel's representative, should the employee be dissatisfied with the results of the investigation into whether to grant and/or deny the request for leave of absence;

j.      notice that employees or applicants complaining of disability discrimination may use the company's internal complaint procedure and/or may file charges with the EEOC or state or local Fair Employment Practice (FEP) agencies. The notice shall also state that filing an internal complaint does not relieve the complainant of meeting any applicable deadline for the filing of a charge or complaint with the EEOC or state or local FEP agencies.

k.      the internal procedure with respect to requests for leave of absence will permit, but not require, an employee to initiate such process by submitting a written form designed for the purpose.

l.      the internal procedure with respect to requests for leave of absence is not intended to supplant the right of any employee to file a charge or complaint of discrimination or retaliation under any available municipal, state, or federal law.

m.      With respect to requests for leave of absence, the following elements will be included in the procedure: a statement that it is unacceptable to retaliate against any employee for use of the internal procedure with respect to requests for leave of absence.

C.      Accommodation Logs

Within sixty (60) days of the Effective Date of this Agreement, American Apparel will insure that Accommodation Logs are maintained as set forth in American Apparel's ADA Policy attached as Exhibit 1, and as follows:

1.      American Apparel shall maintain an Accommodation Log to monitor all requests for reasonable accommodations, including, but not limited to requests for leave of absence, that documents each accommodation request that it receives by any employee for the term of this Agreement and/or monitor all complaints of discrimination, harassment, retaliation, and/or unequal treatment of caregivers under the ADA for the term of this Agreement whether initiated by request of the employee or at the instigation of the employer.  The Accommodation Log shall be maintained and monitored by American Apparel's ADA Coordinator.

With respect to the accommodation request and/or complaints of discrimination, harassment, retaliation and/or unequal treatment of caregivers under the ADA, the Accommodation Log shall include the following information:

    a.      The first name and last name initial of the person(s) making the request and/or the complaint;

    b.      Date of the request and/or complaint, including the date of the alleged discrimination, harassment or retaliation;

    c.      Physical or mental impairment, and/or description of the discrimination, harassment or retaliation complaint and/or the nature of the complaint;

    d.      Accommodation(s) requested, if any;

    e.      Any person to whom the request for accommodation was made and/or the name(s) of the person(s) to whom the complaint was made;

    f.      Any person involved in the interactive process, and/or the name(s) of the person(s) involved in the complaint, including

1            but not limited to, the name(s) of the person(s) accused of

2            discrimination, harassment or retaliation; and the name(s) of all

3            witnesses identified by the complainant and/or through

4            American Apparel's investigation;

5       g.     Any person involved in the decision-making process regarding

6            the request for accommodation and/or the name(s) of each of

7            American Apparel's employee(s) or agents who investigated,

8            handled, or resolved the complaint;

9       h.     List of any records or documents made or reviewed in the

10           course of engaging in the interactive process and/or the

11           investigation of the complaint; and

12      i.     Any accommodation provided or denied and reason for the

13           decision and/or a brief summary of how each complaint was

14           resolved.

15    2.     In the event that there are any subsequent requests to modify an

16 accommodation or to implement a different accommodation, American Apparel

17 shall include in the Accommodation Log all of the above information with respect

18 to any such subsequent request.

19    3.     On an annual basis for the duration of the Agreement, American

20 Apparel shall provide to the EEOC a copy of the Accommodation Logs as

21 described in Section XI.C. (Reporting).

22    4.     American Apparel shall retain all documents relating to the

23 accommodation request/efforts and/or complaints identified in the Accommodation

24 Log. Any supporting documents will be provided to the Commission within 30

25 days by American Apparel upon request to the extent permitted by the applicable

26 law. If any dispute arises regarding the production of a copy of the

27 Accommodation Log or supporting documents, either party may invoke the dispute

28 resolution pursuant to the Dispute Resolution in Section VII of this Agreement.

5.      At least annually throughout the term of the Agreement, the ADA Coordinator shall verify American Apparel's compliance with these Accommodation Log provisions.

D.      Training

Within ninety (90) days of the Effective Date of this Agreement, American Apparel will insure that trainings are commenced as follows:

1.      With the assistance of the ADA Coordinator, all hourly employees, and managers, supervisory employees, and hourly group lead employees who are not identified as one of the 40 individuals listed in Exhibit 3, who work at American Apparel's production facility located at 747 Warehouse Street, Los Angeles, CA 90021 will be informed orally and in writing about their rights and responsibilities under the ADA within ninety (90) days of the effective date, including, but not limited to, the employee's right for reasonable accommodations and equal treatment of employees with care-giving responsibilities under the ADA; and American Apparel's final policies and procedures regarding the ADA, including, but not limited to American Apparel's protocol for requesting a reasonable accommodation and identify the persons to whom requests for leave of absence shall be made to.  The dissemination of this information is required to have an interactive component.

2.      With the assistance of the ADA Coordinator, American Apparel's managers, supervisory employees, and hourly group lead employees, who are identified as one of the 40 individuals listed in Exhibit 3 and who work at American Apparel's production facility located at 747 Warehouse Street, Los Angeles, CA 90021, shall attend a live training program of at least one (1) hour in duration, within ninety (90) days of the effective date.  At a minimum, this disability discrimination and retaliation training shall include instructions regarding: their rights and responsibilities under the ADA, including, but not limited to, the employee's right for reasonable accommodations and equal

treatment of employees with care-giving responsibilities under the ADA; and American Apparel's final policies and procedures regarding the ADA, including, but not limited to American Apparel's protocol for requesting a reasonable accommodation and identify the persons to whom requests for leave of absence shall be made to.

3.     In addition, all of American Apparel's human resources personnel and/or any employee who will or may be making the decision regarding the request for reasonable accommodation and/or investigating complaints of disability discrimination, harassment, and/or retaliation at 747 Warehouse Street, Los Angeles, CA 9002 shall attend a live training program of at least two (2) hours in duration, within ninety (90) days of the effective date with the assistance of the ADA Coordinator.  At a minimum, this disability discrimination and retaliation training shall include instruction regarding:

a.     Responsibilities and requirements of the ADA, including providing reasonable accommodation(s) for disabled individuals, with an emphasis on the difference between a leave of absence under the ADA and a leave of absence under the FMLA, and equal treatment of employees with care-giving responsibilities;

b.     A review of American Apparel's revised disability discrimination and reasonable accommodation policies;

c.     Handling requests for reasonable accommodation to ensure the performance of essential job functions and the enjoyment of equal benefits and privileges of employment; and

d.     Training of management and human resources personnel in dealing with disability discrimination complaints and reasonable accommodation requests shall additionally include training on how to recognize and prevent disability discrimination and/or retaliation, how to recognize requests for

accommodation under the ADA, how to engage in the interactive process, and how to go about accommodating individuals with a disability.

4.      Any required employee who fails to attend such training shall receive training individually within thirty (30) days thereafter.   All employees later hired or promoted to such a position shall receive the same training within ninety (90) days of his/her hire or promotion for the term of this Agreement.

5.      After the initial training as specified above is completed, all such employees working shall receive such training at least annually thereafter for the remainder of the term of this Agreement.

6.      All such employees shall verify their attendance at such training in writing.

7.      Within sixty (60) days after the Effective Date, American Apparel shall submit to the EEOC the training materials, a description of the training to be provided, and an outline of the curriculum developed for the trainees.  American Apparel shall give the EEOC a minimum of ten (10) business days' advance notice of the date, time, and location of each training session.  American Apparel shall allow the presence of an EEOC representative at any such training session.

E.      Posting of Notice of Settlement and Consent Decree

1.      Within ten (10) business days after the Effective Date, and throughout the term of this Agreement, American Apparel shall post at American Apparel's production facility located at 747 Warehouse Street, Los Angeles, CA 90021 the Notice of Settlement and Consent Decree (attached as Exhibit 2) in a conspicuous place accessible to all employees.  The Notice of Settlement and Consent Decree shall be posted in English, Spanish, and/or in any other dominant language the employees understands.  Within fifteen (15) days after the Effective Date, American Apparel shall submit to the EEOC a statement confirming the posting of the Notice of Settlement and Consent Decree.

1        2.      At least annually throughout the term of the Agreement, the ADA

2  Coordinator shall verify American Apparel's compliance with the Posting-of-

3  Notice provisions.

4  F.      Recruiting and Educational Outreach

5        Within twelve (12) months of the Effective Date, American Apparel will

6  sponsor a one day conference on the rights of workers and responsibilities of

7  employers under the ADA to be held in Los Angeles, California, and coordinated

8  by the non-profit Center for Human Rights and Constitutional Law (CHRCL), with

9  invited presenters to include representatives of organizations with expertise in the

10 ADA, including but not limited to the Disability Rights Legal Center and

11 Disability Rights California. Free and low cost legal services providers and

12 employers will be invited to attend the training conference. Within twenty-four

13 (24) months of the Effective Date, American Apparel will sponsor a second one

14 day conference on the responsibilities of employers under the ADA to be held in

15 Los Angeles, California, and coordinated by the non-profit Center for Human

16 Rights and Constitutional Law (CHRCL), with invited presenters to include

17 representatives of organizations with expertise in the ADA, including but not

18 limited to the Disability Rights Legal Center and Disability Rights California. Free

19 and low cost legal services providers and employers will be invited to attend the

20 training conference. Representatives of the EEOC shall be invited to make

21 presentations at these training conferences. American Apparel shall dedicate

22 $20,000 to the conferences in actual costs or in-kind contributions (such as space

23 for the conferences, design of materials, printing of materials, publicity, etc.).

24 Continuing legal education credits shall be available to attorneys who attend these

25 training conferences.

26 G.      Non-Discrimination Statement

27        Within ten (10) days of the Effective Date, American Apparel shall ensure

28 that it has included a non-discrimination statement inclusive of disability in all job

postings and application materials.  Within thirty (30) days of the Effective Date, American Apparel shall submit to the EEOC a statement confirming the inclusion of the non-discrimination statement.

## XI.

## RECORD KEEPING AND REPORTING

A.    Document Preservation

For the duration of the Agreement, American Apparel shall maintain such records as are necessary to demonstrate their compliance with this Agreement, including but not limited to the documents that demonstrate compliance of the Agreement.

1.    As stated in Section X.C., American Apparel shall establish a record-keeping procedure (i.e. an Accommodation Log) that provides for the centralized tracking of discrimination complaints and/or requests for accommodation, and all documents generated in connection with any complaint and/or request for accommodation, any investigation into any complaint and/or any interactive process regarding any request for accommodation, including, but not limited to, a request for leave of absence, and any resolution of any complaint and/or request for accommodation for the duration of the Agreement.

2.    The records to be maintained shall also include all documents generated in connection with the educational outreach of the disabled community for the duration of the Agreement (i.e. a breakdown of the expenses with receipts for the educational outreach).

B.    Initial Reports

1.    As stated in Section X.D., within sixty (60) days after the Effective Date, American Apparel shall submit to the EEOC the training materials, a description of the training to be provided, and an outline of the curriculum developed for the trainees.

C.      Annual Reports

On an annual basis for the duration of the Agreement, American Apparel shall provide the EEOC with written Annual Reports. The annual reports shall include the following:

      a.    Accommodation Logs as described in Section X.C. above with a key and text bolded if one employee has presented more than one request for accommodation and/or complaint;

      b.    Training conducted or attended by American Apparel's employees on anti-discrimination laws and requirements under the ADA;

      c.    Change in designation of the ADA Coordinator, if any;

      d.    Documents verifying the occurrence of all training sessions and names and positions of all attendees for each session as required under this Agreement;

      e.    An analysis of the monitoring done for repeat complaints by employees and by location;

      f.    A description detailing any changes of the procedures or record-keeping methods for centralized tracking of discrimination complaints and/or requests for reasonable accommodation(s), and the monitoring of such complaints within thirty (30) days before implementing such changes; and

      g.    All documents generated in connection with the educational outreach of the disabled community for the duration of the Agreement (i.e. a breakdown of the expenses with receipts for the educational outreach).

//
//

## XII.

## COSTS OF ADMINISTRATION AND IMPLEMENTATION

## OF THE AGREEMENT

American Apparel shall bear all costs associated with its administration and implementation of its obligations under this Agreement.

## XIII.

## COSTS AND ATTORNEYS' FEES

Each party shall bear its own costs of suit and attorneys' fees.

## XIV.

## MISCELLANEOUS PROVISIONS

A.      During the term of this Agreement, American Apparel shall provide any potential successor-in-interest with a copy of this Agreement within a reasonable time of not less than thirty (30) days prior to the execution of any agreement for acquisition or assumption of control of any or all of American Apparel's facilities, or any other material change in corporate structure, and shall simultaneously inform the EEOC of same.

B.      During the term of this Agreement, American Apparel and its successors shall assure that each of its officers, managers, supervisors, and Human Resources personnel is aware of any term(s) of this Agreement that may be related to his/her job duties.

C.      Unless otherwise stated, all notices, reports and correspondence required under this Agreement shall be delivered to the attention of the Regional Attorney, Anna Y. Park, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, 255 E. Temple St., 4th Fl., Los Angeles, CA. 90012, Peter Schey, Attorney At Law, 11994 Chalon Rd., Los Angeles, CA 90049, and Joyce Crucillo, American Apparel, 747 Warehouse St., Los Angeles, CA 90021.

//

//

D.      The Parties agree to entry of this Agreement and judgment subject to final approval by the Court.

                                        EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION

Date:  December ____, 2011          By: _____
                                        Anna Y. Park
                                        Attorney for Plaintiff EEOC


                                        AMERICAN APPAREL


Date: December 13, 2011        By: _____
                                        Peter A. Schey
                                        Attorney for Defendant
                                        American Apparel


Date: December 13, 2011    By: _____
                                        Dov Charney
                                        CEO for American Apparel

**[PROPOSED] ORDER**

**GOOD CAUSE APPEARING:**

The Court hereby retains jurisdiction and the provisions of the foregoing Settlement and Consent Decree are hereby approved and compliance with all provisions thereof is fair and adequate.

**IT IS SO ORDERED.**

Date: December 15, 2011__

The Honorable Margaret M. Morrow
United States District Court Judge